UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Post-Confirmation) |
| | ) | |
| BIRD GLOBAL, INC., *et al.*, | ) | Case No. 23-20514-CLC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| JOSEPH J. LUZINSKI, as Liquidating Trustee of the Bird Global Liquidating Trust, | ) | Adv. Proc. No. 26-01171-CLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERNST & YOUNG LLP and ERNST & YOUNG US LLP, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ERNST & YOUNG LLP'S MOTION TO COMPEL
<u>ARBITRATION AND TO STAY PROCEEDINGS (ECF No. 8)</u>**

187636477.1

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ....................................................................................................... 4

ARGUMENT ........................................................................................................... 6

I.     The Delegation Clause in the Arbitration Provision Is Not Valid as to the Avoidance Claims ......................................................................................................... 6

II.    EY Bears the Initial Burden of Establishing That The Arbitration Provision is Valid and Binding as to the Avoidance Claims ............................................................. 7

III.   The Arbitration Provision Is Not Valid and Enforceable as to the Avoidance Claims ......................................................................................................................... 9

       a.     The Trustee Has Unique Standing to Bring the Avoidance Claims ........... 9

       b.     The Avoidance Claims Are Creditor-Derived And Not Subject to the Arbitration Provisions in the Engagement Letters, to Which the Trustee Was Not a Party ...................................................................................... 10

IV.    Even if the Court Finds the Avoidance Claims are Subject to the Arbitration Provision, It Should Still Deny the Motion to Compel Because Arbitration of The Avoidance Claims Conflicts with the Underlying Purpose of the Bankruptcy Code ......................................................................................................................... 13

       a.     Eleventh Circuit Precedent: The Whiting-Turner Analysis ..................... 13

       b.     The Avoidance Claims Are Core Proceedings Under 28 U.S.C. § 157(b)(2)(H) ............................................................................................ 14

       c.     This Court Should Reject EY's Attempt to Recharacterize the Avoidance Claims as Non-Core Claims ................................................................... 15

              1.     The Trustee has Sufficiently Alleged the Elements of the Avoidance Claims .................................................................................. 15

              2.     The Trustee Can Pursue Alternative Theories of Recovery ......... 17

       d.     Compelling Arbitration of the Avoidance Claims Conflicts with the Bankruptcy Code ..................................................................................... 19

i

187636477.1

1.      The Bankruptcy Court's Role in Adjudicating Core Claims Is Essential ................................................................................... 19

2.      Arbitration Eliminates the Right to Meaningful Appellate Review and Transparency ......................................................... 21

V.      The Trustee's Use of the Dispute Resolution Procedures in the Engagement Letters Does Not Bar His Right to Litigate the Avoidance Claims in This Court............ 23

VI.     This Proceeding Should Not Be Stayed............................................................. 25

CONCLUSION..................................................................................................................... 26

187636477.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AstroPower Liquidating Tr.*,
335 B.R. 309 (Bankr. D. Del. 2005) ...................................................................................23

*Attix v. Carrington Mortg. Servs., LLC*,
35 F.4th 1284 (11th Cir. 2022) ............................................................................................8

*In re Bateman*,
585 B.R. 618 (Bankr. M.D. Fla. 2018) ..............................................................................21

*In re Certified HR Servs. Co.*,
No. 05-22912-BKC-RBR, 2007 WL 3342752 (Bankr. S.D. Fla. Nov. 6, 2007).............8, 9, 11

*Cmty. State Bank v. Strong*,
485 F.3d 597 (11th Cir. 2007) ..............................................................................................9

*Cont'l Nat'l Bank v. Sanchez (In re Toledo)*,
170 F.3d 1340 (11th Cir. 1999) ....................................................................................15, 20

*In re Custom Contractors, LLC*,
462 B.R. 901 (Bankr. S.D. Fla. 2011).................................................................................15

*In re D.I.T., Inc.*,
575 B.R. 534 (Bankr. S.D. Fla. 2017).................................................................................12

*In re Eber*,
687 F.3d 1123 (9th Cir. 2012) ............................................................................................18

*In re Evergreen Sec., Ltd.*,
319 B.R. 245 (Bankr. M.D. Fla. 2003) ...............................................................................17

*In re Friedman's Inc.*,
372 B.R. 530 (Bankr. S.D. Ga. 2007) ........................................................................... *passim*

*In re Friedman's*,
372 B.R. .......................................................................................................................12, 16

*In re Gandy*,
299 F.3d 489 (5th Cir. 2002) ..............................................................................................18

*Hall Street Associates, L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008).............................................................................................................22

iii

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
     885 F.2d 1149 (3d Cir. 1989).........................................................................10, 11, 12

*Int'l Fidelity Ins. Co. v. BMC Contractors, Inc.*,
     2007 WL 128813 (M.D. Ga. Jan. 12, 2007) .........................................................26

*Matter of Int'l Gold Bullion Exch., Inc.*,
     53 B.R. 660 (Bankr. S.D. Fla. 1985)....................................................................25

*Jaime Torres International Sports Management, Inc., v. Kapila*,
     2016 WL 8585339 (S.D. Fla. May 11, 2016) ..................................................12, 13

*In re Jaime Torres Sports Mgmt, Inc.*,
     No. 13–10537–BKC–RAM, 2015 WL 13186218 (Bankr. S.D. Fla. 2015) ......................20, 21

*In re Laubenstein*,
     No. 2:20-CV-765-SPC, 2021 WL 857142 (M.D. Fla. Mar. 8, 2021).......................................21

*Leidel v. Coinbase, Inc.*,
     729 F. App'x 883 (11th Cir. 2018) .......................................................................25

*In re Nat'l Gypsum*,
     118 F.3d 1056 (5th Cir. 1997) .............................................................................18

*O'Halloran v. First Union Nat'l Bank of Fla.*,
     350 F.3d 1197 (11th Cir. 2003**)** ..........................................................................11

*In re Oakwood Homes Corp.*,
     No. 02-13396PJW, 2005 WL 670310 (Bankr. D. Del. Mar. 18, 2005)...................................23

*In re Palm Beach Fin. Partners, L.P.*,
     527 B.R. 518 (S.D. Fla. 2015) .............................................................................15

*Parker v. Wendy's Int'l*,
     Inc., 365 F.3d 1268 (11th Cir. 2004) ...................................................................10

*Perrotta v. First Edge, LLC*,
     2025 WL 2695117 (M.D. Fla. Sept. 22, 2025) .....................................................25

*In re Providence Fin. Invs., Inc.*,
     593 B.R. 884 (Bankr. S.D. Fla. 2018)..................................................................7, 19

*Sawgrass Ford Inc. v. Vargas*,
     214 So. 3d 691 (Fla. 4th DCA 2017)....................................................................25

*Shearson/American Express, Inc. v. McMahon*,
     482 U.S. 220 (1987).........................................................................................8, 12

iv

*In re Shores of Panama, Inc.*,
  387 B.R. 864 (Bankr. N.D. Fla. 2008) ................................................................19

*In re Try The World, Inc.*,
  No. 18-11764-JLG, 2021 WL 3502607 (Bankr. S.D.N.Y. Aug. 9, 2021) ..............................23

*Whiting-Turner Contracting Co. v. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises, Inc.)*,
  479 F.3d 791 (11th Cir. 2007) ..................................................... *passim*

**Statutes**

9 U.S.C. § 3 ...........................................................................................................25

9 U.S.C. § 10 .........................................................................................................22

9 U.S.C. § 11 .........................................................................................................22

11 U.S.C. § 105(a) .................................................................................................22

11 U.S.C. § 157(b)(2)(A) .......................................................................................15

11 U.S.C. § 524(a)(2) .............................................................................................21

11 U.S.C. § 541 ......................................................................................................12

11 U.S.C § 541(a) ...................................................................................................11

11 U.S.C. § 544 ..................................................................................... *passim*

11 U.S.C. § 544(b) ...................................................................................................9

11 U.S.C. § 547 .....................................................................................................9, 11

11 U.S.C. § 548 ..................................................................................... *passim*

11 U.S.C. § 548(a)(1)(B) ........................................................................................17

11 U.S.C. § 550 ..................................................................................... *passim*

11 U.S.C. § 1334(b) ...............................................................................................15

28 U.S.C. § 157(b)(1) .............................................................................................15

28 U.S.C. § 157(b)(2)(H) ...........................................................................15, 18, 20

28 U.S.C. § 158 ......................................................................................................15

28 U.S.C. § 1334 ....................................................................................................20

187636477.1

Federal Arbitration Act, 9 U.S.C. § 1-16 ................................................................... 14, 22

Fla. Stat. Ann. § 726 ................................................................................................. 1

Fla. Stat. Ann. § 726.101-201 .................................................................................. 5, 10

N.Y. Debtor and Creditor Law § 273(a)(2) .............................................................. 1

N.Y. Debtor and Creditor Law § 274(a) .................................................................. 1

**Other Authorities**

CPR 8.1 ..................................................................................................................... 7

CPR 8.2 ..................................................................................................................... 7

Fed. R. Bankr. P. 6009 ............................................................................................. 10

Fed. R. Bankr. P. 7001 ............................................................................................. 1

187636477.1

## PRELIMINARY STATEMENT

Plaintiff Joseph J. Luzinski ("**Trustee**" or "**Plaintiff**"), the Liquidating Trustee of the Bird Global, Inc. Liquidating Trust (the "**Liquidating Trust**") is charged with investigating and pursuing "Retained Causes of Action" which were transferred by Bird Global Inc., Bird Rides Inc., Bird US Holdco LLC, Bird US Opco LLC, and Skinny Labs Inc. (together, "**Bird**," "**Company**," or the "**Debtors**") to the Liquidating Trust for the benefit of holders of allowed claims in Classes 2, 3, and 5 of the Chapter 11 Plan (the "**Liquidating Trust Beneficiaries**").  In order to fulfill his duties, the Trustee has filed the above-captioned action to recover approximately $7 million in avoidable transfers (the "**Avoidance Claims**") made by the Debtors to and for the benefit of Ernst & Young LLP and Ernst & Young US LLP ("**EY**" and "**EY US**," respectively, or collectively, the "**Defendants**") pursuant to sections 544, 548, and 550 of title 11 of the United States Code (the "**Bankruptcy Code**").[1]

In its Motion to Compel Arbitration and to Stay Proceedings (ECF No. 8 - the "**Motion to Compel**"), EY urges this Court to yield its specialized role in adjudicating the Avoidance Claims in favor of a panel of private arbitrators in a non-administered and non-appealable arbitration proceeding pursuant to an engagement letter entered into years before the Company filed bankruptcy and that the Trustee never signed.[2]  The Court should deny the Motion to Compel

---

[1] The Trustee asserts his claims pursuant to sections 544, 548, and 550 of the Bankruptcy Code, Rule 7001 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rule(s)**"), Chapter 726 of the Florida Statutes (or, in the alternative, New York Debtor and Creditor Law §§ 273(a)(2) and 274(a)).

[2] Not only did the Trustee not sign the arbitration agreement, the Debtors' payments made for the benefit of EY and underlying the Avoidance Claims were made by the Debtors to a separate legal entity called Ernst & Young US LLP.  Accordingly, the Trustee's complaint was amended on July 17, 2026 to add EY US as a co-defendant.  *See* Amended Complaint attached hereto at Exhibit A. The Trustee does not rely on the terms of the arbitration agreement and the Trustee does not assert

1

187636477.1

because EY has not satisfied its burden to show that the arbitration provision in EY's engagement letters bind the non-signatory Trustee as to the Avoidance Claims.  Even if EY could demonstrate the applicability of the engagement letter to the Avoidance Claims, the Court should still deny the Motion to Compel because compelling arbitration of the Avoidance Claims, (which indisputably constitute "core proceedings") inherently conflicts with the objectives of the Bankruptcy Code.

Courts in the Eleventh Circuit widely recognize the distinction between debtor-derived claims, which are subject to a debtor's prepetition arbitration agreement, and creditor-derived core claims under the Bankruptcy Code which are not.  The fact that the Avoidance Claims are creditor-derived claims is in-and-of itself a legally sufficient basis to warrant denial of the Motion to Compel.

Moreover, following Eleventh Circuit precedent in *Whiting-Turner Contracting Co. v. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises, Inc.)*, 479 F.3d 791, 796–97 (11th Cir. 2007), this Court should also deny the Motion to Compel because 1) the Avoidance Claims constitute "core proceedings" squarely within this Court's jurisdiction and 2) compelling arbitration of this core proceeding would run contrary to the objectives of the Bankruptcy Code.

Compelling arbitration of the Trustee's core claims against the Defendants would conflict with the underlying purpose of the Bankruptcy Code, including but not limited to, resolution of the Trustee's claims by this Court, a centralized forum, with expertise in bankruptcy law and extensive knowledge of Bird's bankruptcy case, proper administration of the estate, and the equitable treatment of creditors.

---

any concerted action on the part of EY and EY US.  EY US was not a party to any arbitration agreement with the Debtors and cannot compel arbitration.

2

EY cannot credibly argue that the Avoidance Claims are debtor-derived and non-core. Instead, EY tries to recharacterize them as breach of contract and professional negligence claims, subject to the arbitration provisions contained in the EY Engagement Letters. EY previously made the same argument in a motion to compel a trustee's fraudulent transfer claims and lost. *See In re Friedman's Inc.*, 372 B.R. 530, 538–39 (Bankr. S.D. Ga. 2007).  As discussed further below, the *Friedman's Inc.* court rejected EY's efforts to evade its jurisdiction by reclassifying the trustee's bankruptcy claims as a non-core breach of contract claim simply because the trustee pursued alternative theories of recovery.  This Court should reach the same conclusion in denying the Motion to Compel.

Finally, the Trustee's compliance with certain provisions of the EY engagement letters for the Liquidating Trust's separate debtor-derived malpractice and contract claims against EY does not estop the Trustee from asserting the Avoidance Claims in this Court. The Trustee has commenced litigation in different forums for different types of claims, consistent with the terms of the engagement letters, where applicable, and the case law in this Circuit. There is no inconsistency in the Trustee's approach, but rather an acknowledgement of the different venues for non-core, debtor-derived claims for malpractice and breach of contract claims that are subject to arbitration and core, creditor-derived avoidance claims that are not subject to arbitration and are properly adjudicated in this Court.

This Court should exercise its discretion to deny the Motion to Compel because the Avoidance Claims are derived solely under the Bankruptcy Code and involve the rights not just of the Trustee, but the Liquidating Trust Beneficiaries.  Given the importance of the recovery to the Liquidating Trust Beneficiaries, this Court's bankruptcy expertise, and extensive knowledge of the Bird bankruptcy case, this Court is the appropriate forum to adjudicate this action.

## BACKGROUND

As set forth in the Complaint, prior to its bankruptcy filing on December 20, 2023 (the "**Petition Date**"), Bird was a micromobility company that provided the general public with access to a fleet of electric vehicles, such as e-scooters and e-bikes, for short-distance transportation.

Prior to the Petition Date, Bird engaged EY to audit and report on the Company's consolidated financial statements for the years ended December 31, 2020, December 31, 2021, and December 31, 2022 (the "**Financial Statements**") and to review the Company's unaudited interim financial information (the "**Engagement**"), pursuant to engagement letters dated March 23, 2021, November 30, 2021, and October 12, 2022 (the "**Engagement Letters**").  *See* ECF No. 9, Exs. A-C.

Pursuant to the Engagement Letters, EY promised Bird that it would, among other things: 1) conduct the audits of Bird's Financial Statements in accordance with GAAS and express an opinion on whether they were presented fairly, in all material respects, *in conformity with GAAP*; 2) plan and perform the audits to obtain reasonable assurance about whether the Financial Statements were free of material misstatement, whether caused by error or fraud; and 3) employ audit methodologies designed to meet applicable standards, including GAAS, AICPA, and the standards and rules of the SEC and PCAOB. In connection with these proposed services, Bird paid EY $3,717,450 during the two year period preceding the Petition Date and $6,892,550 during the four year period preceding the Petition Date.

Despite receiving millions of dollars from Bird, EY failed to deliver the auditing services promised in the Engagement Letters.  EY's failures culminated in Bird's filing of a Form 8-K with the SEC on November 14, 2022, disclosing that it had improperly recognized as revenue uncollected customer overdrafts from 2020 through the second quarter of 2022 and, thus, that Bird's revenue was materially overstated (and deferred revenue was materially understated) during

4

187636477.1

that time frame.  As a result, the Form 8-K stated, the Financial Statements "should no longer be relied upon."  On November 18, 2022, Bird restated its financials from 2020 through 2Q 2022 in Form 10-K/A, 10-Q/A, and 10-Q filings with the SEC (the "**Restatement**").

On the Petition Date, the Debtors filed voluntary Chapter 11 petitions for relief with this Court.

On June 3, 2024, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Liquidation* (ECF No. 802 – the "**Chapter 11 Plan**"). Among other things, Article VI of the Chapter 11 Plan provided for (i) the establishment of a Liquidating Trust; (ii) the appointment of Joseph J. Luzinski as Liquidating Trustee; (iii) the preservation of "Retained Causes of Action" (as defined therein); and (iv) the Trustee's standing to prosecute Retained Causes of Action. Exhibit 6 of the Chapter 11 Plan likewise provided that "[o]n and after the Effective Date … the Liquidating Trustee … shall have standing to and may pursue such Retained Causes of Action" specifically including, but not limited to, "claims to avoid and recover constructive or actual fraudulent conveyances under 11 U.S.C. §§ 544, 548, 550 and Fla. Stat. Ann. § 726.101-201…." On September 24, 2024, the Trustee filed the Liquidating Trustee Agreement (ECF No. 1375 – the "**Liquidating Trust Agreement**") to facilitate the implementation of the Chapter 11 Plan, "which provides for the establishment of the Liquidating Trust for the purpose of collecting, distributing and liquidating the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries in accordance with the terms of this Agreement and the Plan."

On May 21, 2026, the Trustee filed an adversary complaint asserting Avoidance Claims against EY pursuant to 11 U.S.C. §§ 544, 548, and 550.  On June 19, 2026, the Trustee separately served a Notice of Arbitration on EY (ECF No. 9, Ex. E), pursuant to the dispute resolution procedures in the Engagement Letters (the "**Arbitration Provisions**"), asserting debtor-derived

187636477.1

claims for breach of contract, professional negligence and malpractice, negligent misrepresentation, and aiding and abetting breach of fiduciary duty.  Pursuant to the Arbitration Provisions, prior to serving the Notice of Arbitration, the Trustee provided notice to EY on November 25, 2025 of a dispute related to EY's actions and omissions during its audits of the Debtors (ECF No. 9, Ex. D) and participated in a mediation with EY on April 23, 2026.

The Trustee's invocation of the dispute resolution procedures relates to separate claims that arise out of the Engagement Letters and are different in nature from the statutory Avoidance Claims asserted in this adversary proceeding.  Because these common-law claims arise from the Debtor's engagement of EY, they are appropriately subject to the Arbitration Provisions in the Engagement Letters.  By contrast, the Avoidance Claims asserted in this adversary proceeding are creditor-derived, core proceedings which should remain before this Court.

## **ARGUMENT**

### I.   **THE DELEGATION CLAUSE IN THE ARBITRATION PROVISIONS IS NOT VALID AS TO THE AVOIDANCE CLAIMS**

As a threshold matter, because the Trustee's Avoidance Claims are creditor-derived claims that are not subject to the Arbitration Provisions as discussed further below, the delegation clause, which hands questions regarding the scope of the Arbitration Provisions to the arbitrators themselves, is also not applicable.

EY's argument that the language of the Arbitration Provisions "clear[ly] and unmistakabl[y]" delegates questions of arbitrability to an arbitrator presupposes that the Trustee's claims in this action are subject to the Arbitration Provisions.  The Trustee disputes that his Avoidance Claims are subject to the Arbitration Provisions based on their nature as creditor-derived claims that arise under the Bankruptcy Code, a position supported by Eleventh Circuit precedent.  Accordingly, the delegation clause is not binding on the Trustee, a non-signatory to the

6

Arbitration Provisions, in regard to claims that are not subject to the Arbitration Provisions. For these same reasons, CPR Rules 8.1 and 8.2, incorporated into the Arbitration Provisions and relating to an arbitration tribunal's power to determine arbitrability, are not binding on the Trustee with regard to his Avoidance Claims.

In *Friedman's Inc.*, the court was presented with the same EY delegation provision that is at issue here. 372 B.R. at 536. However, the Court denied the motion to compel arbitration without referring the issue of arbitrability to an arbitrator because the subject claims were creditor-derived avoidance claims rather than debtor-derived claims and the trustee was "not a successor-party to [the] debtor's pre-petition arbitration agreements." Tellingly, the cases cited by EY in the Motion to Compel to enforce the delegation clause are distinguishable because they do not involve creditor-derived, core bankruptcy claims. *See In re Providence Fin. Invs., Inc.*, 593 B.R. 884, 894 (Bankr. S.D. Fla. 2018) (enforcing delegation clause in regard to non-core claims); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1303 (11th Cir. 2022) (enforcing delegation clause in regard to non-bankruptcy claims). Accordingly, this Court—not an arbitrator—should decide whether the Trustee's Avoidance Claims should be compelled to arbitration.

## II. EY BEARS THE INITIAL BURDEN OF ESTABLISHING THAT THE ARBITRATION PROVISION IS VALID AND BINDING AS TO THE AVOIDANCE CLAIMS

EY attempts to place the initial burden on the Trustee to demonstrate that the Arbitration Provisions inherently conflict with the purposes of the Bankruptcy Code and should not be enforced, pursuant to the seminal Eleventh Circuit case, relying on *Whiting-Turner* (479 F.3d 791). EY is incorrect because it has the burden in the first instance to demonstrate the existence of a valid and binding arbitration agreement.

7

187636477.1

As laid out by the court in *In re Certified HR Servs. Co.*, "[t]he Eleventh Circuit applied the following analysis to determine if arbitration must be compelled. **First**, it examined whether the parties "entered into a valid arbitration agreement to resolve any and all claims or issues between them." No. 05-22912-BKC-RBR, 2007 WL 3342752, at \*2 (Bankr. S.D. Fla. Nov. 6, 2007) (quoting *Whiting–Turner,* 479 F.3d. at 795) (emphasis added).  "If the first prong is met, **then** the party opposing arbitration has the burden to prove "that Congress intended to preclude a waiver of judicial remedies for [the particular claim] at issue." *Id.*  (quoting *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227 (1987)).

Thus, as an initial step, as the "party moving to compel arbitration," EY must "be the one to establish" that the Arbitration Provision is valid and binding.  *Certified HR Servs.*, 2007 WL 3342752, at \*4.  As dictated both by "fairness" and "Eleventh Circuit precedent," EY must establish:

> (1) that there was a valid agreement; (2) it is enforceable; (3) it is enforceable against the opposing party; and (4) the claim or issue to be submitted to arbitration must be subject to the agreement. Absent any one of these factors the moving party…fails the first prong of the test as a matter of law.

*Id.* (citing *Cmty. State Bank v. Strong,* 485 F.3d 597, 618–19 (11th Cir. 2007)).

"Only once the validity of the agreement is established does the burden shift to the opposing party under the second step [of *Whiting-Turner*]." *Id*. at \*2.

Similar to the facts in this proceeding, in *Certified HR Servs*., a trustee asserted preference and fraudulent transfer claims against a defendant, which had acted as a broker for the debtor, seeking to recover payments pursuant to 11 U.S.C. §544(b), §547, and §548. Like EY here, the defendant moved to compel arbitration, based on an arbitration provision in the parties' sales agreement, but could not meet its initial burden of establishing that a valid arbitration agreement

8

187636477.1

existed as to the fraudulent transfer claims because the claims were creditor-derived. *See id.* at *4 (defendant "has failed to establish that the claim or issue to be arbitrated is subject to the arbitration agreement" because the fraudulent transfer claims "stemmed from the creditors or trustee powers granted within the bankruptcy code, these claims cannot be subject to arbitration unless the Trustee or the creditors have assented to the arbitration agreement").

As discussed further below, EY cannot meet its initial burden of demonstrating that the Arbitration Provision is enforceable against the Trustee as to the Avoidance Claims or that those claims are subject to the Arbitration Provisions because they are creditor-derived claims. EY's inability to demonstrate that the Arbitration Provision is valid in this action is "dispositive" and therefore, "there is no need for the Court to examine the [inherent conflict] step of the *Whiting-Turner* analysis." *Id.* This Court should deny the Motion to Compel based on the fact that the Trustee's Avoidance Claims are creditor-derived claims alone, without having to conduct any further analysis.

Nonetheless, the Trustee will also demonstrate that mandating arbitration of his Avoidance Claims would directly contravene the objectives of the Bankruptcy Code under *Whiting-Turner* and that the Court may, in its discretion, decline to enforce the Arbitration Provisions.

## III.   THE ARBITRATION PROVISION IS NOT VALID AND ENFORCEABLE AS TO THE AVOIDANCE CLAIMS

### a.   The Trustee Has Unique Standing to Bring the Avoidance Claims

The Trustee is charged with holding and maximizing the value of the Liquidating Trust assets, reconciling claims, and making distributions to Liquidating Trust Beneficiaries pursuant to the Chapter 11 Plan and the Liquidating Trust Agreement. As the Eleventh Circuit has recognized, "a trustee, as the representative of the bankruptcy estate, is the proper party in interest, and is the only party with standing to prosecute causes of action belonging to the estate." *Parker v. Wendy's*

9

187636477.1

*Int'l*, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004); *see also* Fed. R. Bankr. P. 6009 (trustee may commence and prosecute an action or proceeding on the estate's behalf before any tribunal).

In addition, the Chapter 11 Plan expressly gives the Trustee standing to pursue Retained Causes of Action including, but not limited to, "claims to avoid and recover constructive or actual fraudulent conveyances under 11 U.S.C. §§ 544, 548, 550 and Fla. Stat. Ann. § 726.101-201…."

**b. The Avoidance Claims Are Creditor-Derived And Not Subject to the Arbitration Provision in the Engagement Letters, to Which the Trustee Was Not a Party**

As discussed in *Certified HR Servs.*, when a trustee in bankruptcy asserts bankruptcy claims, the trustee is bringing claims on behalf of *the debtor's creditors*, not the debtor itself, and therefore does not stand in the shoes of the debtor. *See id.* at *3 (emphasis added). Relying on *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir. 1989)) and decisions following, the court noted that in prior cases involving motions to compel arbitration of fraudulent transfer claims, courts have held that "§ 544, § 547 and § 548 claims 'are creatures of statute, available solely for the benefit of creditors of the debtor, whose rights the trustee enforces' and that "no claim" brought under these sections could be derived from the debtor. " *Certified HR Servs.*, 2007 WL 3342752, at *3 (citations omitted). Therefore, "based on the fact that the claims are not derivative of the debtor the court held the claims did not have to be submitted to arbitration," pursuant to a debtor's prepetition arbitration agreement. *Id*.

In contrast, a trustee who asserts a cause of action derived from the debtor's rights stands in the debtor's shoes. *O'Halloran v. First Union Nat'l Bank of Fla.,* 350 F.3d 1197, 1202 (11th Cir. 2003**)** ("A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy."). For these types of debtor-derived claims, such as breach of contract, negligence, or professional malpractice, "the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and…is

10

bound by the clause to the same extent as would the debtor." *In re Friedman's Inc.*, 372 B.R. 530, 538 (Bankr. S.D. Ga. 2007) (quoting *Hays,* 885 F.2d at 1153).

The Trustee has asserted both types of claims against EY and, in accordance with the authority of this Circuit, filed these claims in two different forums.  The Trustee's debtor-derived claims, sounding in breach of contract, professional negligence, negligent misrepresentation and aiding and abetting breach of fiduciary duty claims, were owned and possessed by the Debtors on the Petition Date and thus, were property of the bankruptcy estate under 11 U.S.C § 541(a).  These claims are derived from the Debtors' rights under the Engagement Letters and are appropriately subject to the Arbitration Provision.  The Trustee has filed the Notice of Arbitration in the CPR Institute for Dispute Resolution for these claims.

For the Avoidance Claims, claims brought on behalf of the beneficiaries of the Liquidating Trust, the Trustee appropriately commenced the instant proceeding in this Court because such claims are plainly "nonarbitrable," *Id.* at 539. The Debtors could not have brought Avoidance Claims against EY outside of bankruptcy — these claims were reserved to the Debtor's creditors. They are not disputes arising out of or relating to the Engagement Letters; they are statutory causes of action available to the Trustee for the purpose of maximizing the value of Retained Causes of Action for the benefit of the Liquidating Trust Beneficiaries.  Here, the Arbitration Provisions are intended to cover disputes "arising out of or relating to" EY's services (EY Brief at 6), such as the claims asserted by the Trustee in the arbitration against EY, *not* statutory avoidance powers that Congress granted exclusively to trustees and debtors-in-possession. *See Shearson*, 482 U.S. at 226 (the Federal Arbitration Act's mandate may be overridden where there is a "contrary congressional command").

11

This position is well-established by authority in this Circuit. *See In re Friedman's Inc*., 372 B.R. at 538 (fraudulent transfer claims are "*creditor* claims that the Code authorizes the trustee to assert on [the debtor's] behalf") (quoting *Hays*, 885 F.2d at 1155); *Jaime Torres International Sports Management, Inc., v. Kapila*, 2016 WL 8585339, at *6 (S.D. Fla. May 11, 2016) (finding that "the debtor cannot sue to recover its own fraudulent transfers" and that the cause of action is one that the trustee brings on behalf of the creditors) (quoting *In re Friedman's*, 372 B.R. at 545); *In re D.I.T., Inc*., 575 B.R. 534, 537–38 (Bankr. S.D. Fla. 2017) (holding trustee bringing § 548 fraudulent transfer claims is not bound by debtor's prepetition contractual waivers because avoidance claims are distinct statutory causes of action created by the Code itself, not debtor-owned claims that become estate property under § 541).

Significantly, courts in this Circuit have ended their inquiry after determining that a trustee's claim is creditor-based, determining such claims are not subject to a debtor's prepetition arbitration obligations without also analyzing whether requiring arbitration would conflict with the Bankruptcy Code.  *See In re Friedman's Inc.*, 372 B.R. at 539 (stating that because "a party asserting creditor-based claims does not stand in the shoes of the debtor, it is not a party to the arbitration agreement" and applying a further "inherent conflict" analysis only to debtor-derived claims); *Torres*, 2016 WL 8585339, at *6 (finding that Trustee inherited alter-ego claim from creditors and "thus it is not arbitrable").

Based on this precedent, this Court can and should deny the Motion to Compel based solely on the grounds that the Trustee's Avoidance Claims are creditor-derived.  EY cannot dispute this basic point and so its only avenue is to argue that the "Trustee stands in Bird's position with respect to the payments and services at issue" – that is the Trustee is standing in the Debtors' shoes when asserting the Avoidance Claims. EY Brief at 7.  Here, EY is trying to reframe the Trustee's

12

bankruptcy claims as professional negligence claims arising out of the Engagement Letters and to characterize the Avoidance Claims as debtor-derived and subject to the Arbitration Provisions. EY's reasoning is flawed for a couple of reasons. First, the Avoidance Claims do not arise out of the Engagement Letters. Rather, they are statutory claims under state law and the Bankruptcy Code. Second, EY "fail[s] to note the distinction between, the concepts of creditor-derived and debtor-derived claims with core and non-core proceedings." *Torres*, 2016 WL 8585339, at *5, n. 6. "A determination of whether a proceeding is core or non-core does not involve the same line of inquiry as a determination of whether a claim is creditor-derived or debtor-derived." *Id.* Whether or not the Avoidance Claims are truly "breach of contract" or "professional negligence" claims (which the Trustee contends they are not) goes to whether the claims are core or non-core, not whether they are creditor or debtor-derived. EY cannot get around the fact that the Avoidance Claims are creditor-derived and therefore, not subject to the Arbitration Provisions, by merely describing the claims as arising under the Engagement Letters and "governed by the arbitration provisions." EY Brief at 7.

IV. **EVEN IF THE COURT FINDS THE AVOIDANCE CLAIMS ARE SUBJECT TO THE ARBITRATION PROVISION, IT SHOULD STILL DENY THE MOTION TO COMPEL BECAUSE ARBITRATION OF THE AVOIDANCE CLAIMS CONFLICTS WITH THE UNDERLYING PURPOSE OF THE BANKRUPTCY CODE**

Even if the Court were to determine that the Avoidance Claims are subject to the Arbitration Provisions, the Court can still deny the Motion to Compel because forcing core bankruptcy claims into private arbitration would create an inherent conflict with the Bankruptcy Code.

a. **Eleventh Circuit Precedent: The Whiting-Turner Analysis**

In *Whiting-Turner*, the Eleventh Circuit set forth the framework for determining whether arbitration inherently conflicts with the Bankruptcy Code. 479 F.3d 791, 796–97 (11th Cir. 2007).

13

Evaluating the factors set forth in *Shearson*, the Eleventh Circuit first determined that neither the text nor the legislative history of the Federal Arbitration Act (the "**FAA**") demonstrated that Congress intended the Bankruptcy Code to be a blanket exception to the arbitration statute. The court then focused on "whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code," which requires a determination of whether a proceeding is core or non-core. *Id.* at 796.

*Whiting-Turner* noted that while a bankruptcy court generally does not have the discretion to decline to enforce an arbitration provision for a non-core proceeding, if a proceeding is core, the next step is to determine whether enforcing the arbitration agreement conflicts with the Bankruptcy Code. *Id*.

### b.   The Avoidance Claims Are Core Proceedings Under 28 U.S.C. § 157(b)(2)(H)

Congress expressly identified "proceedings to determine, avoid, or recover fraudulent conveyances" as core proceedings under 28 U.S.C. § 157(b)(2)(H). The Avoidance Claims seek to avoid and recover transfers made by the Debtors to and for the benefit of the Defendants under 11 U.S.C. §§ 544, 548, and 550, rendering this matter an indisputably core proceeding. *See* 28 U.S.C. § 157(b)(1) (bankruptcy courts "may hear and determine all ... core proceedings arising under title 11 ... and may enter appropriate orders and judgments, subject to review under [28 U.S.C. § 158]"); *see also Whiting-Turner*, 479 F.3d at 797 ("'[i]f [a] proceeding involves a right created by the federal bankruptcy law, it is a core proceeding.' A proceeding is also considered core "'[i]f the proceeding is one that would arise only in bankruptcy.'") (quoting *Cont'l Nat'l Bank v. Sanchez (In re Toledo),* 170 F.3d 1340, 1348 (11th Cir. 1999).

Congress specifically included avoidance actions in the list of core proceedings because these claims are central to the bankruptcy process and the equitable distribution of estate assets. *See In re Palm Beach Fin. Partners, L.P.*, 527 B.R. 518, 523–24 (S.D. Fla. 2015) (confirming

14

fraudulent transfer actions fall within bankruptcy jurisdiction under §§ 1334(b) and 157(b)(2)(A) as matters affecting estate administration); *see also In re Custom Contractors, LLC,* 462 B.R. 901, 910 (Bankr. S.D. Fla. 2011) (noting that fraudulent transfer claims may only be prosecuted by a bankruptcy trustee on behalf of the bankruptcy estate and the trustee and estate are strictly creatures of the Bankruptcy Code).

### c.   This Court Should Reject EY's Attempt to Recharacterize the Avoidance Claims as Non-Core Claims

EY attempts to confuse this clear point by characterizing the Avoidance Claims as dressed-up professional negligence and/or breach of contract claims, an approach EY previously attempted to no avail.   In *Friedman's Inc.*, EY moved to compel arbitration of a trustee's fraudulent conveyance claims under Georgia's UFTA and 11 U.S.C § 548, arguing, as it does here, that those claims were really "ordinary breach of contract or professional malpractice claims" disguised as bankruptcy claims. 372 B.R. at 545–47.

The *Friedman's Inc.* court found EY's argument that the trustee's statutory fraudulent transfer claims were actually breach of contract or professional negligence claims "unpersuasive" and denied the motion to compel as to those claims on two separate grounds: first, because EY did not demonstrate that the trustee had failed to state a claim under the applicable fraudulent transfer statutes and second, because it was permissible for the trustee to pursue alternative theories against EY.  Both grounds apply here and this Court should reach the same conclusion as *Friedman's Inc*.

### 1.   The Trustee has Sufficiently Alleged the Elements of the Avoidance Claims

First, like *Friedman's Inc.*, the Trustee has pleaded the elements of his avoidance claims under the Bankruptcy Code.  The Complaint alleges that Bird transferred estate property to EY within the relevant lookback periods, including approximately $3.7 million in the two years before the Petition Date for the Trustee's section 548 claim and approximately $6.9 million in the four

15

years before the Petition Date for the Trustee's section 544 claim.  The Complaint further alleges that Bird received less than reasonably equivalent value from EY in exchange for these transfers because EY performed deficient audit and review services by, among other things, issuing unqualified opinions despite not obtaining or testing Bird's wallet subledger, not conducting required analyses of negative and positive wallet balances, and not identifying the material revenue-recognition misstatements that later required Bird to restate its financials.  Finally, the Complaint alleges that the transfers were made while Bird was insolvent, inadequately capitalized, or unable to pay debts as they came due. These are statutory elements that are unrelated to professional standards of care and the Trustee is not seeking damages for professional malpractice or breach of contract in this proceeding.

Importantly, EY does not argue that the Trustee has failed to state a claim under 11 U.S.C. §§ 544, 548, and 550.  Instead, EY suggests that because the Trustee does not allege that the EY "failed to perform *any* services," but rather that "EY performed the agreed-upon services in an inadequate way," the Trustee's claims necessarily "arise out of the Agreements" and therefore are not true fraudulent transfer claims. EY Brief at 10 (emphasis added).  EY's argument is not persuasive and is inconsistent with the Bankruptcy Code. Section 548(a)(1)(B) requires only that a debtor "received *less than* a reasonably equivalent value in exchange," which is precisely what the Trustee alleges: Bird paid EY for audit and review services but received materially deficient services that failed to provide reasonably equivalent value.  11 U.S.C. 548(a)(1)(B) (emphasis added).  The Trustee does not need to allege that EY "failed to provide the contracted-for audit report" (EY Brief at 10); the Trustee has stated a claim by plausibly alleging that the services EY provided were not reasonably equivalent to the payments Bird made to EY.

16

Further, the concept of "reasonably equivalent value" is a bankruptcy concept analyzed under the Bankruptcy Code, not simply an analysis of the terms of the Engagement Letters and accounting standards. *See* EY Brief at 11. This Court, not an arbitrator, is the appropriate forum to make this determination because it requires a consideration not only of the value received by the Debtors, but also of the interests of the Liquidating Trust Beneficiaries. *See In re Evergreen Sec., Ltd.*, 319 B.R. 245, 253 (Bankr. M.D. Fla. 2003) ("value must be assessed on a 'case by case basis' by looking at the surrounding circumstances and by focusing on the precise nature of the transfer" and "the purpose of voiding transfers unsupported by 'reasonably equivalent value' is to protect creditors against the depletion of a bankrupt's estate") (citations omitted).

### 2. The Trustee Can Pursue Alternative Theories of Recovery

Second, also like *Friedman's Inc.*, the mere fact that the Avoidance Claims "may arise out of a common set of facts in which the elements of a breach of contract claim might also exist" does not prevent the Trustee from pursuing both theories. 372 B.R. at 546. In *Friedman's Inc.*, the trustee included both types of claims in the complaint. *Id*. Here, the Trustee includes only the Avoidance Claims, which weighs even more strongly in favor of this Court retaining the claims because there are no other, non-core claims to adjudicate in this action.

The fact that the underlying transaction involved professional services does not change the core, creditor-derived nature of the Avoidance Claims. A fraudulent transfer claim to recover payments to a vendor, a landlord, or an auditor is equally a core proceeding under § 157(b)(2)(H). The nature of the *transferee's business* does not alter the nature of the *claim*. If EY's logic were correct, any service provider could immunize itself from avoidance actions simply by including an arbitration clause in its engagement letters — a result that would fundamentally undermine the avoidance powers of trustees and debtors in possession under the Bankruptcy Code.

17

187636477.1

Authority from other circuits supports a finding that the Avoidance Claims should be considered core, even if there is potential overlap with the Trustee's non-core claims that are subject to arbitration. *See In re Eber,* 687 F.3d 1123, 1130–31 (9th Cir. 2012) (rejecting defendants' attempt to characterize claims as non-core arbitrable claims and found they were "seeking to arbitrate dischargeability, a core bankruptcy issue"); *see also In re Gandy*, 299 F.3d 489, 497 (5th Cir. 2002) (finding that debtor's avoidance action claims under §§ 544, 548, and 550 were "core proceedings" derived from federal rights conferred by the Bankruptcy Code and holding that "[w]hile some of Debtor's remaining claims do involve her pre-petition legal or equitable rights, the bankruptcy causes of action predominate"…"[t]he heart of Debtor's complaint concerns the avoidance of fraudulent transfers and implicates non-bankruptcy contractual and tort issues 'in only the most peripheral manner' ") (quoting *In re Nat'l Gypsum*, 118 F.3d 1056, 1067 (5th Cir. 1997).

The case law cited by EY in support of compelling arbitration is distinguishable from the Avoidance Claims before the Court here. *See In re Providence Fin. Invs., Inc.*, 593 B.R. 884 (Bankr. S.D. Fla. 2018) (only compelling arbitration of non-core claims and turnover claim, not a fraudulent conveyance claim, because the "true substance" was an extension of breach of contract); *see also In re Shores of Panama, Inc.,* 387 B.R. 864 (Bankr. N.D. Fla. 2008) (involving a state-law contract claim that "does not invoke a substantive right created by federal bankruptcy law," unlike an avoidance action, and acknowledging that core proceedings involving bankruptcy-created rights are treated differently from state-law claims).

Here, the Trustee's claims do not depend on whether EY breached its professional duties; rather, they depend on whether the estate received reasonably equivalent value for the payments it made for EY's auditing services. This is the critical distinction. A malpractice claim asks whether

18

the professional met the standard of care; a fraudulent transfer claim asks whether the estate received adequate value for what it paid. These are entirely different inquiries with different elements, different burdens, and different remedies.

### d. Compelling Arbitration of the Avoidance Claims Conflicts with the Bankruptcy Code

An assessment of whether or not compelling arbitration of the Avoidance Claims conflicts with the Bankruptcy Code, as required under the *Whiting-Turner* analysis, also supports denial of the Motion to Compel.[3]

### 1. The Bankruptcy Court's Role in Adjudicating Core Claims Is Essential

The Eleventh Circuit recognizes that bankruptcy courts have a central responsibility to administer the estate, marshal estate assets, and adjudicate claims that affect the equitable distribution to creditors.  See *In re Toledo*, 170 F.3d 1340, 1345–46 (11th Cir. 1999) (explaining that core proceedings are those that "arise under" the Bankruptcy Code or "arise in" a bankruptcy case and involve rights created by bankruptcy law or matters that could arise only in bankruptcy).

The Avoidance Claims fall squarely within this Court's core jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(H) (defining "proceedings to determine, avoid, or recover fraudulent conveyances" as core).  Requiring the Avoidance Claims to proceed outside the Bankruptcy Court would

---

[3] Contrary to statements in EY's brief (EY Brief at 12-13), *Whiting-Turner* did not find that no conflict existed between enforcement of the arbitration provisions at issue and the Bankruptcy Code. *Whiting-Turner* ultimately determined that the proceeding at issue was non-core and that even if the proceeding had been core, there was "no evidence in the record" to suggest that sending the claim to arbitration would "inherently conflict with the Bankruptcy Code." 479 F.3d at 799. EY references this outcome as supportive of its position on the Motion to Compel, but in fact, the Eleventh Circuit notes that the court below "did not assess whether enforcing the parties' arbitration agreement would inherently conflict with the underlying purposes of the Bankruptcy Code." *Id*.  It held that "[o]nly if the bankruptcy court actually makes a sufficient finding that enforcing an arbitration agreement would inherently conflict with the Bankruptcy Code does it have the discretion to deny enforcement of the arbitration agreement." *Id*.  In other words, the lower court improperly stopped after determining the proceeding was core and did not perform an inherent conflict analysis.

187636477.1

undermine the court's ability to perform its core bankruptcy function: centralized resolution of estate causes of action for the Liquidating Trust Beneficiaries. *See* 28 U.S.C. § 1334 (granting bankruptcy courts "original and exclusive jurisdiction of all cases under title 11").

In *In re Jaime Torres Sports Mgmt, Inc.*, No. 13–10537–BKC–RAM, 2015 WL 13186218, at *2-3 (Bankr. S.D. Fla. 2015), the court denied a motion to compel arbitration of fraudulent transfer claims, noting the importance of maintaining the objectives of the Bankruptcy Code. In that matter, a trustee asserted fraudulent transfer claims against certain entities, seeking the "recovery of proceeds from the recipients of fraudulent transfers," as the Trustee does here against EY. *Id*. at *3. The court noted that the trustee was not "seeking to litigate the validity of the underlying contracts or to enforce the contracts against a signatory party" and the "terms of the contracts themselves are not at issue." *Id*. In denying the defendants' request for arbitration and retaining the fraudulent conveyance claims, the court found that:

> What is clear is that all claims in the Amended Complaint are routine bankruptcy matters brought by a trustee in bankruptcy court…[An] arbitration proceeding [would] hijack what falls squarely within this Court's jurisdiction and *forcing the Trustee to participate in binding arbitration in a forum unfamiliar with bankruptcy law would pose an inherent conflict with the purposes of the Bankruptcy Code…*

*Id*. at *3 (emphasis added).

Unlike an arbitrator, this Court possesses specialized knowledge of the Code and can adjudicate the Avoidance Claims in the context of the Debtors' estates as a whole, which the Court has overseen since Bird's 2023 bankruptcy filing. The Court is uniquely positioned to resolve the Avoidance Claims because the claims directly implicate the Court's central functions: marshaling estate assets, facilitating timely distributions, and administering the case in an efficient and equitable manner. *See In re Laubenstein,* No. 2:20-CV-765-SPC, 2021 WL 857142, at *4 (M.D.

20

187636477.1

Fla. Mar. 8, 2021) (finding that the arbitration agreement would conflict with the Bankruptcy Code because certain claims, including fraudulent transfer claims, were core claims or intertwined with the bankruptcy proceeding and therefore, the "interests of judicial economy and efficiency are best served through consideration thereof by the bankruptcy court"); *see also In re Bateman*, 585 B.R. 618, 629 (Bankr. M.D. Fla. 2018) (finding that a claim under Section 524(a)(2) was a core claim and that enforcing the arbitration provision would present an inherent conflict with the Bankruptcy Code because the successful discharge of a debt is the principal goal of the Bankruptcy Code and enforcement of the discharge strikes at the heart of the bankruptcy court's unique powers).

In addition, this Court has the ability to coordinate avoidance actions with other aspects of estate administration, including claims allowance and distribution to the Liquidating Trust Beneficiaries, and to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" pursuant to its equitable powers under 11 U.S.C. § 105(a). The resolution of the Trustee's Avoidance Claims against EY may affect the amount available for distribution to Liquidating Trust Beneficiaries and the timing of distributions from the Liquidating Trust. An arbitrator operating outside the bankruptcy system has no visibility into or authority over the Bird bankruptcy as a whole, which will be directly affected by this proceeding.

### 2. Arbitration Eliminates the Right to Meaningful Appellate Review and Transparency

One of the most critical protections the bankruptcy system provides is the right to appellate review. Decisions of the bankruptcy court are reviewable by the district court and then by the circuit court of appeals. This multi-layered appellate process ensures that errors of law can be corrected and that the rights of the estate and its creditors are protected.

Arbitration awards, by contrast, are subject to only extremely limited judicial review under 9 U.S.C. §§ 10–11. An arbitrator's errors of law or fact are generally not reviewable. The Supreme

Court confirmed in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), that the grounds for vacating an arbitration award under the FAA are exclusive and cannot be expanded, even by agreement of the parties. Under *Hall Street*, a court may vacate an arbitration award only for corruption, fraud, evident partiality, misconduct, or where the arbitrators exceeded their powers — *not* for errors of law or fact, no matter how egregious.

This means that if an arbitrator were to incorrectly interpret the Bankruptcy Code's avoidance provisions — for example, misapplying the "reasonably equivalent value" standard under § 548(a)(1)(B), incorrectly determining the applicable look-back period, or erroneously interpreting the debtor's insolvency — there would be no meaningful recourse for the estate or the Liquidating Trust Beneficiaries. The arbitrator's decision would be, for all practical purposes, final and unreviewable.

The loss of appellate review is particularly dangerous in the context of avoidance actions, where the amounts at stake can be substantial and the legal issues are complex.  Courts have addressed these issues at length:

> To subject these matters to arbitration, before individuals or tribunals with little or no experience in bankruptcy law or practice, and with little or no concern for the rights and interests of the body of creditors, of which the particular defendant is only one, would introduce variables into the equation which could potentially bring about totally inconsistent results.

*In re Oakwood Homes Corp.*, No. 02-13396PJW, 2005 WL 670310, at *5 (Bankr. D. Del. Mar. 18, 2005) (denying arbitration of preference and fraudulent conveyance claims and explaining that arbitration would jeopardize Bankruptcy Code policies of consistent administration and equitable treatment of creditors); *see also*, *e.g.*, *In re Try The World, Inc.*, No. 18-11764-JLG, 2021 WL 3502607, at *9–17 (Bankr. S.D.N.Y. Aug. 9, 2021) ("bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach," and holding

22

fraudulent transfer claims nonarbitrable because they belong to creditors who did not agree to arbitrate and because their resolution would significantly affect estate administration) (citation omitted); *In re AstroPower Liquidating Tr.*, 335 B.R. 309, 326 (Bankr. D. Del. 2005) ("[C]reditors may not be compelled indirectly through their representative to arbitrate fraudulent transfer claims pursuant to a pre-petition contract to which they were not parties," and declining to stay core fraudulent transfer litigation where delay could prejudice the estate). The Liquidating Trustee's Declaration confirms that compelling arbitration would undermine the trust's court-supervised administration of creditor-derived avoidance claims by frustrating the Trustee's stated objectives of providing "transparency to the creditor body," "preserving appellate rights," and maximizing expeditious distributions to the Liquidating Trust Beneficiaries. *See* Luzinski Declaration attached hereto as ***Exhibit B*** at ¶¶ 6–7, 11–12. The Liquidating Trust Beneficiaries should not be deprived of the right to appeal an erroneous decision on claims that Congress specifically designated for bankruptcy court adjudication.

## V.     THE TRUSTEE'S USE OF THE DISPUTE RESOLUTION PROCEDURES IN THE ENGAGEMENT LETTERS DOES NOT BAR HIS RIGHT TO LITIGATE THE AVOIDANCE CLAIMS IN THIS COURT

EY argues that the Trustee is estopped from opposing arbitration because the Trustee previously invoked the mediation and arbitration procedures in the Engagement Letters. EY Brief at 15. Equitable estoppel requires a showing that a party has taken inconsistent positions to the detriment of the opposing party, which EY has not and cannot demonstrate. The Trustee's use of mediation and arbitration procedures for the debtor-derived professional negligence and breach of contract claims and commencement of an adversary proceeding for the creditor-derived Avoidance Claims demonstrates the Trustee's understanding of the differences between the two types of claims and the applicability of the Arbitration Provisions. This is a key distinction EY glosses over in the Motion to Compel.

23

As set forth above, the Arbitration Provisions relate to separate claims for negligence, professional malpractice, breach of contract, and related theories which arise out of the Debtors' prepetition contract with EY.  For these claims, the Trustee steps into the shoes of the Debtors, is bound by the Arbitration Provisions set forth in the Engagement Letters and appropriately commenced mediation and arbitration.  These claims are distinct from the Avoidance Claims, which are statutory causes of action, asserted in this proceeding with different elements, different legal theories, and different remedies.

For these same reasons, equitable estoppel does not apply because the Trustee is not taking inconsistent positions.   As set forth above, the Trustee's decision to bring his claims in two separate venues reflects the difference between creditor and debtor-derived claims.  The Eleventh Circuit and other courts have rejected equitable estoppel arguments under similar circumstances. *See Leidel v. Coinbase, Inc.,* 729 F. App'x 883, 888 (11th Cir. 2018) (party cannot be equitably estopped from avoiding arbitration agreement when the scope of the arbitration clause does not cover the subject dispute); *see also Matter of Int'l Gold Bullion Exch., Inc.*, 53 B.R. 660, 667 (Bankr. S.D. Fla. 1985) (holding that equitable estoppel is not available as a bar to a trustee's avoidance powers because the trustee stands in the shoes of creditors).

To the extent EY's estoppel argument rests on the overlap of underlying facts, the overlap of factual allegations does not transform statutory avoidance actions into contractual disputes. The factual circumstances surrounding EY's audits may be relevant to both the common-law claims and the fraudulent transfer claims, but the legal theories, elements of proof, and remedies are entirely different. The common-law claims require proof that EY breached a duty of care; the Avoidance Claims require proof that the estate transferred property for less than reasonably equivalent value. These are fundamentally different inquiries that share some overlapping facts.

24

187636477.1

EY's reliance on *Sawgrass Ford Inc. v. Vargas*, 214 So. 3d 691 (Fla. 4th DCA 2017), and *Perrotta v. First Edge, LLC*, 2025 WL 2695117 (M.D. Fla. Sept. 22, 2025), is misplaced. Those cases involved parties seeking to invoke the same contract for the same claims while simultaneously refusing to be bound by that contract's arbitration provisions. Here, the Trustee is invoking the Bankruptcy Code, not the Engagement Letters, as the basis for the Avoidance Claims. Thus, the Trustee is pursuing different claims in different forums, consistent with Eleventh Circuit precedent, and is not estopped from litigating the Avoidance Claims in this Court.

## VI.    THIS PROCEEDING SHOULD NOT BE STAYED

Because the Motion to Compel should be denied, there is no basis to stay this proceeding under 9 U.S.C. § 3. Section 3 of the FAA requires a stay only where the court determines that the matter is "referable to arbitration." Because the Avoidance Claims should remain under the core jurisdiction of this Court and are not referable to arbitration for the reasons set forth above, the stay provision is inapplicable. *See In re Friedman's Inc.*, 372 B.R. at 549 ("Where it is feasible to proceed with the litigation of nonarbitrable claims, courts will generally not enter a stay") (citing *Int'l Fidelity Ins. Co. v. BMC Contractors, Inc.,* 2007 WL 128813, at *3 (M.D. Ga. Jan. 12, 2007).

Staying this proceeding would cause harm to the estate and the Liquidating Trust Beneficiaries, as a stay would result in indefinite delay while the arbitration is litigated. The Liquidating Trust was established for the purpose of prosecuting Retained Causes of Action and distributing proceeds to the Liquidating Trust Beneficiaries. Unnecessary delay in the resolution of these avoidance claims directly harms the beneficiaries who are awaiting distributions from the trust.

In the alternative, if the Court imposes a stay, the Trustee requests that the stay not take effect until after discovery is complete but before trial.  This approach would allow this litigation

187636477.1

to proceed in due course while the arbitration continues and would minimize the risk of duplicative or conflicting findings.

In *Friedman's Inc.*, the court declined to stay litigation of the nonarbitrable claims until discovery was completed, recognizing the importance of "expedit[ing]" litigation. *Friedman's Inc.*, 372 B.R. at 550. The court stated: "Permitting discovery will allow the parties to have nonarbitrable issues ready for trial, if necessary, immediately upon completion of the arbitration. At the same time, however, staying the trial of these claims pending the completion of the arbitration will reduce the possibility of inconsistent results or overlapping findings."

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion to Compel. EY has failed to satisfy its burden of demonstrating that the Arbitration Provisions are valid and enforceable as to the Avoidance Claims. Furthermore, even if the Court finds that EY has established that a valid arbitration agreement exists, the Court should deny the Motion to Compel because compelling arbitration of the Avoidance Claims would conflict with the Bankruptcy Code and undermine the centralized administration of the Bird estate.

Respectfully submitted this 17th day of July, 2026.

**FOX ROTHSCHILD LLP**

By: *Robert Elgidely, Esq.*
Robert F. Elgidely, Esq.
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2750
Miami, FL 33131
Telephone: (305) 442-6543
Facsimile: (305) 442-6541
Email: relgidely@foxrothschild.com

-and-

Sidney S. Liebesman, Esq. (admitted *pro hac vice*)
Stephanie Slater Ward, Esq. (admitted *pro hac vice*)

26

1201 N. Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 622-4237
Facsimile: (302) 656-8920
Emails: sliebesman@foxrothschild.com
       sward@foxrothschild.com

-and-

Elizabeth C. Viele, Esq. (*pro hac vice* forthcoming)
101 Park Avenue, 17th Floor
New York, NY 10178
Telephone: (212) 878-7968
Facsimile:  (212) 692-0940
Email: eviele@foxrothschild.com

-and-

Gordon E. Gouveia, Esq. (admitted *pro hac vice*)
321 North Clark Street, Suite 1600
Chicago, IL 60654
Telephone: (312) 980-3816
Facsimile: (312) 517-9201
Email: ggouveia@foxrothschild.com

-and-

Michael A. Sweet, Esq. (admitted *pro hac vice*)
345 California Street, Suite 2200
San Francisco, California 94104
Telephone: (415) 364-5540
Facsimile: (415) 391-4436
Email: msweet@foxrothschild.com

*Counsel to Joseph J. Luzinski, not individually but solely in his capacity as the Liquidating Trustee of the Bird Global, Inc. Liquidating Trust*

27

187636477.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2026, I electronically filed the foregoing *Plaintiff's Memorandum Of Law In Opposition To Defendant Ernst & Young LLP's Motion To Compel Arbitration And To Stay Proceedings* (ECF No. 8) with the Clerk of the Court using the CM/ECF System. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means including Ian M. Ross, Esq., Sidley Austin LLP, 830 Brickell Plaza, Miami, FL 33131.

By:/s/ Robert F. Elgidely
Robert F. Elgidely, Esq.

28

187636477.1